# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY AUSTIN PILLER,<br><br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:18-cv-00548-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 6, 8).

At a hearing on May 30, 2019, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

\\\

**A. The ALJ's Treatment of Plaintiff's Subjective Symptom Testimony**

Plaintiff challenges the Administrative Law Judge's ("ALJ") evaluation of Plaintiff's testimony. As to subjective testimony, the Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). Given that there is objective medical evidence of an underlying impairment, the Court examines whether the ALJ rejected Plaintiff's subjective symptom testimony by offering specific, clear, and convincing reasons.

The ALJ provided the following reasons for the weight given to Plaintiff's subjective symptom testimony:

> <u>The medical evidence does not support the claimant's allegations of debilitating symptoms regarding his back and neck pain and degenerative changes therein.</u>
>
> The claimant's allegation of constant chronic pain are [sic] out of proportion to his typically unremarkable presentation during appointments. For example, providers frequently observed the claimant as being comfortable and in no acute or apparent distress when evaluated during the relevant period. (Exhibits 3F/9, 4F/12, 6F/9/10/13/16, 7F, 8F, 9F/8, 31F/14/19, 32F/13/15/16/19/22/23). Additionally, muscle atrophy is a common side effect of prolonged or chronic pain due to lack of use of a muscle in order to avoid pain. The claimant had no evidence of muscle atrophy during the relevant period. Indeed, the claimant had largely normal strength in his upper and lower extremities on multiple occasions with substantially intact reflexes and no edema. (*See e.g.*, 3F/9/13/14, 5F, 8F, 24F/1). This evidence suggest [sic] that his symptoms of pain are not as debilitating as he described.

The claimant complained of chronic back and neck pain, at least partially arising from his spine disorders. His allegations, however, are out of proportion to the overall objective evidence. Although the clamant [sic] occasionally presented some tenderness in his back and neck, multiple examinations failed to note any significant abnormality in his gait, consistent palpable muscle spasms, restriction in his movements, or restriction in his range of motion. (Exhibits 3F/9, 5F, 7F, 8F, 24F/1, 32F/21/23). Indeed, despite complaining of back pain and being prescribed oxycodone, there are instances here his musculoskeletal system examination was unremarkable, such as in June 2014. (*See e.g.*, Exhibit 3F/9/13). Consistent with the foregoing, he was noted as generally healthy. (Exhibit 6F/5).

That is not to say that the claimant did not have significant conditions warranting the limitations stated in the residual functional capacity. A magnetic resonance imaging (MRI) study in August 2014 showed straightening of the cervical lordosis, central canal slightly narrowing, and neuroforaminal narrowing at the C3-C4 vertebrae. (Exhibit 5F/5). However, the MRI study's impression was largely mild to moderate. (Exhibit 9F/12/13). Further, in September 2014, after review of his MRI study, it was noted he did not require surgical intervention. Rather, conservative measures were utilized including pain medication and physical therapy. (Exhibit 6F/9).

<u>The claimant only sought treatment for one episode of seizure like activity.</u>

The claimant reported in October 2014 that he had one seizure in September 2014 and reported loss of consciousness, convulsions, and biting his tongue. (Exhibit 8E). However, inconsistent with the foregoing, the corresponding medical records indicate that his wife saw him having "seizure-like activity." He denied loss of consciousness or seizure activity. Indeed, the record indicates, "most of his symptoms appeared to be related to the [back] pain and increased spastic activity." (Exhibit 4F/2). Examination was unremarkable. (Exhibit 4F/3/4, 6F/10/13). While he was prescribed Keppra, he stated he did not take it for the majority, if not all, or the relevant period. (Exhibit 9F/7).

Inconsistent with other records indicating that the claimant only had one seizure, July 2014 progress notes state that the claimant reported having one or two episodes of convulsions. Nevertheless, his examination was largely unremarkable with intact sensation, intact neurological system, and normal gait. (Exhibits 5F/7, 9F/7). Further, his EEG study was unremarkable. (Exhibit 5F/5).

Indeed, the record indicates all CT scans, MRI studies, and EEG studies were normal. (Exhibit 6F/156/24, 9F/11, 24F/3). His primary care provider stated that he did not believe "the claimant" suffer[ed] from epilepsy." (Exhibit 24F/1). However, the undersigned has afforded the claimant the utmost benefit of the doubt and included limitations in the residual functional capacity, such as limitations to exposure to hazards, which are congruent with this impairment.

3

> <u>The record fails to evidence any follow-up treatment for his alleged carpal tunnel syndrome.</u>
>
> An EMG study confirmed that the claimant suffered right carpal tunnel syndrome. (Exhibit 5F/7, 6F/23). However, progress notes indicate that he did not have any treatment during the relevant period (the claimant testified that he had not pursued treatment for his carpal tunnel syndrome since the diagnosis in September 2014). In fact, in December 2014, he reported to a consultative examiner that he was prescribed braces to treat his carpal tunnel syndrome, but had not started using them. (Exhibit 8f). His strength was intact. As well, the claimant did not mark any issues with his arm in pain diagrams dated February and April 2015 (Exhibit 41F/52/57). Nonetheless, the residual functional capacity property accounts for this impairment by limiting him to frequent handling and fingering.

(A.R. 27-28) (emphasis in original).

Although Plaintiff takes issue with certain of these arguments as being insufficient, Plaintiff does not address many of them. The Court has reviewed the ALJ's reasoning and the underlying citations and finds that the ALJ rejected Plaintiff's subjective symptom testimony by offering specific, clear, and convincing reasons.

**B. ALJ's Weighing of Opinions by Dr. Malik and Dr. Padgett**

Plaintiff also challenges the decision of the ALJ on the ground that she improperly gave little weight to the opinions of Plaintiff's examining physician, Dr. Malik, and treating physician, Dr. Padgett. The Ninth Circuit has held regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v.*

*Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). Both opinions at issue here were contradicted by other medical opinions. Thus, this Court examines whether the ALJ provided specific and legitimate reasons supported by substantial evidence for giving little weight to Dr. Malik's and Dr. Padgett's opinions.

The ALJ gave the following reasons for the weight given to Dr. Malik's opinions:

> While Dr. Malik had the opportunity to exam[ine] the claimant, it was only one time and she did not have access to the majority of the medical records. Given the claimant's subjective complaints, greater exertional and postural limitations are warranted. Further, the record evidences that the claimant has not had any follow-up treatment for his carpal tunnel syndrome, indicating that occasional limitations are not warranted, especially given his intact sensation, 5/5 grip strength, and intact coordination. Therefore, the undersigned gives this opinion partial weight. (Exhibits 3F/9/13/14, 4F/2-4/12, 5F, 6F/3/5/9/10/13/16/23/24, 7F, 8F, 9F/7/8/12/13, 24F/1/3, 25F/40, 31F/7/14/19, 32F/13/15/16/19/21-23, 41F/41).

(A.R. 30).

The ALJ's reason that Dr. Malik did not have access to a majority of the medical records appears to be mistaken, and not supported by substantial evidence. Moreover, the ALJ's reasoning is brief and mainly a citation to exhibits. Nevertheless, the Court finds the reasoning to be sufficiently specific and legitimate and supported by substantial evidence. Dr. Malik made her opinion based on a single examination of the Plaintiff. The opinion is based on subjective description from the Plaintiff, medical records, and physical examination. As described above, the ALJ elsewhere concluded based on extensive reasoning that the Plaintiff's subjective symptom testimony should not be fully accepted. As for the records, the ALJ sufficiently describes and cites to contrary medical records, at least insofar as the they do not support the extent of limitations opined by Dr. Malik. Furthermore, Dr. Malik's own examination does not independently support his limitations. For example, Dr. Malik observed: "EXREMITIES: Tinel's and Phalen's are negative bilaterally. No clubbing, cyanosis or edema. No atrophy," "MOTOR STRENGTH/MUSCLE BULK/TONE: Tone and bulk are within normal limits in both upper and lower extremities. Power is 5/5 throughout. Grip strength is 5/5 bilaterally," (COORDINATION/STATION/GAIT: Finger-to-nose was intact. Fine finger movements are

normal. Rapid alternating movements are normal. Romberg is negative. Gait is normal. Tandem is normal," "SENSORY: Sensation is intact to light touch, pin, joint position, and double simultaneous stimulation," "REFLEXES: Deep tendon reflexes 2+ bilaterally in the upper and lower extremities," "THORACOLUMBAR: Flexion, extension and lateral flexion are full range and painless." (A.R. 443). Although Plaintiff points to observations of "tenderness to palpation in the left paracervical, upper thoracic spine at the trapezius area," and "he reports neck pain with lateral flexion," (A.R. 443), these observations alone are not sufficient to independently justify the limitations in Dr. Malik's opinion, especially in light of the numerous normal examination findings.

Regarding Dr. Padgett's opinion, the ALJ provided the following reasons for the weight given to that opinion:

> Oddly, Dr. Padgett stated that he was not a medical provider (the record indicates he provided the claimant with pain medication and was utilized to manage the claimant's pain). (Exhibit 28F). Nonetheless, as these opinions are dated after the date last insured, it is unclear exactly when such limitations arose, and they do not clearly address the claimant's functional capacity during the relevant period. Further, these opinions are inconsistent with the longitudinal record, including the claimant's intact strength and normal gait, full range of motion, unremarkable studies, and largely benign observations by care providers. Therefore, the undersigned gives these opinions little weight. (Exhibits 3F/9/13/14, 4F/2-4/12, 5F, 6F/3/5/9/10/13/16/23/24, 7F, 8F, 9F/7/8/12/13, 24F/1/3, 25F/40, 31F/7/14/19, 32F/13/15/16/19/21-23, 41F/41).

(A.R. 30).

While Plaintiff argues that the ALJ could have inquired further about whether Dr. Padgett's opinion also applied prior to the date of last insured, and that other objective evidence supports Dr. Padgett's conclusions, he does not otherwise call into question the ALJ's reasoning or support in the evidence cited.

The Court finds the reasons given by the ALJ for discounting the opinions of Dr. Malik and Dr. Padgett are sufficiently specific and legitimate and supported by substantial evidence.

**C. Conclusion**

Thus, the Court finds that the decision of the Commissioner of Social Security is supported by substantial evidence, and the same is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **May 30, 2019**             /s/ Elise P. Groji
                                    UNITED STATES MAGISTRATE JUDGE